# McDOUGAL *v.* McKAY.

ERROR TO THE SUPREME COURT OF THE STATE OF
OKLAHOMA.

No. 676.   Argued April 14, 1915.—Decided April 26, 1915.

In construing an Act of Congress, its known purpose must be effectuated as nearly as may be.

This court will not disregard the effect of decisions of the state and Federal courts in regard to descent of Indian allotments which have become rules of property and on which many titles have been acquired.

Under the Supplemental Creek agreement of June 20, 1902, the descent

and distribution of allotments is in accordance with chapter 49, Mansfield's Digest of the Laws of Arkansas, provided, however, that only Creek citizens and their descendants shall inherit lands of the Creek nation unless there are no Creek citizen heirs.

The provisions in Mansfield's Digest, distinguishing between ancestral estates which came to a decedent by a parent and new acquisitions and prescribing different rules of inheritance, apply to allotments of a Creek infant born in May, 1901, and dying in November 1901, and whose name was placed on the tribal rolls in October, 1902 pursuant to the provision in the Supplemental Creek agreement of 1902.

An allotment made under the Supplemental Creek agreement of 1902 must be treated, not as a new acquisition, but as an ancestral estate within the meaning of chapter 49 of Mansfield's Digest.

Where a Creek infant, whose allotment was made under the supplemental agreement of 1902, died leaving a father of Creek blood and a mother not of Creek blood the father takes a fee simple to such allotment; had both parents been of Creek blood and duly enrolled each would have taken one-half.

43 Oklahoma,    , affirmed.

THE facts, which involve the construction and effect of the Supplemental Creek Agreement of June 30, 1902, and the ascertainment of heirs of an infant of the Creek Nation enrolled after death, are stated in the opinion.

*Mr. M. E. Rosser,* with whom *Mr. Wm. S. Cochran* was on the brief, for plaintiff in error:

As to the Arkansas statutes and the construction thereof in Arkansas and Indian Territory see c. 49 Mansfield's Digest; *Robinson* v. *Belt,* 107 U. S. 41; *Sanger* v. *Flow,* 48 Fed. Rep. 152; *Blaylock* v. *Muskogee,* 117 Fed. Rep. 152; *S. C.,* 64 S. W. Rep. 609; *McFadden* v. *Blocker,* 48 S. W. Rep. 1043; *Boyd* v. *Mitchell,* 64 S. W. Rep. 610; *Zufall* v. *United States,* 43 S. W. Rep. 760; *Randolph* v. *United States,* 43 S. W. Rep. 1098; *Carter* v. *Barton,* 48 S. W. Rep. 1017; *LeBosquet* v. *Myers,* 103 S. W. Rep. 770; *Bostic* v. *Eggleston,* 104 S. W. Rep. 566; *Western Investment Co.* v. *Davis,* 104 S. W. Rep. 573; *Kelly* v. *Mc-*

*Guire,* 15 Arkansas, 555; *Hogan* v. *Finley,* 52 Arkansas, 55; *Magness* v. *Arnold,* 31 Arkansas, 103; *Wheelock* v. *Simons,* 75 Arkansas, 19.

The land was a new acquisition in the allottee and not an ancestral estate. Act June 28, 1898, 30 Stat. 495; Original and Supplemental Creek Agreements, 31 Stat. 861, 32 Stat. 500; Act April 26, 1906, 34 Stat. 137; *Sizemore* v. *Brady,* 235 U. S. 441; *Reynolds* v. *Fewell,* 236 U. S. 58; *Magness* v. *Arnold,* 31 Arkansas, 103; *Hogan* v. *Finley,* 52 Arkansas, 55; *McKee* v. *Henry,* 201 Fed. Rep. 74.

Citizenship in Creek Nation is not a property right at all. *Cherokee Intermarriage Cases,* 203 U. S. 76; *Wallace* v. *Adams,* 143 Fed. Rep. 716; *Stephens* v. *Cherokee Nation,* 174 U. S. 445.

The lands of the Creek Nation prior to allotment belonged to the Creek Nation as a political body and not to the individual members. 2 Kappler's Indian Laws, 1904 ed.; *Eastern Cherokees* v. *United States,* 117 U. S. 312; *Stephens* v. *Cherokee Nation,* 174 U. S. 445; *Cherokee Nation* v. *Journeycake,* 155 U. S. 197; *Fleming* v. *McCurtain,* 215 U. S. 56; *Ligon* v. *Johnson,* 164 Fed. Rep. 670; *McKee* v. *Henry,* 201 Fed. Rep. 74; *Delaware Indians* v. *Cherokee Nation,* 193 U. S. 127; *Cherokee Nation* v. *Hitchcock,* 187 U. S. 294; *Sizemore* v. *Brady,* 235 U. S. 441; 2 Minors' Institute, 3d ed., pp. 78 and 86; 2 Blackstone, Lewis ed. 569, *p. 109, and see p. 208; *Kelly* v. *McGuire,* 15 Arkansas, 555.

George Franklin Berryhill not only never owned the land but he never could have owned it had Andrew J. Berryhill not lived at the proper time to obtain it as an allotment. Original Creek Agreement, 31 Stat. 861.

The Supreme Court of the State of Oklahoma erred in holding that the evidence offered to the effect that the decision of the Circuit Court of Appeals in *Shulthis* v. *McDougal* had not been followed or acquiesced in by the bar of the State of Oklahoma, or by the *nisi prius* judges, was not admissible. 11 Cyc. 755.

The Supreme Court of Oklahoma erred in holding that the decision in *Shulthis* v. *McDougal* had become a rule of property. 69 Central Law Journal, 217; *Roberts* v. *Underwood,* 127 Pac. Rep. 261; *Barnes* v. *Keys,* 127 Pac. Rep. 261.

Rules of property can be created only by courts of last resort. 11 Cyc. 756; *Ocean Beach Association* v. *Brinley,* 34 N. J. Eq. 438, 448; *American Mortgage Co.* v. *Hopper,* 64 Fed. Rep. 553; *The Madrid,* 40 Fed. Rep. 677; *Gannon* v. *Johnston,* 140 Pac. Rep. 430.

To establish a rule of property the doctrine must be acquiesced in. Bledsoe's Land Laws, 1st ed., § 62.

Justice requires reversal of the rule in *Shulthis* v. *McDougal.* *Mason* v. *Nelson,* 18 L. R. A. (N. S.) 1221.

In support of these contentions see cases cited *supra* and Chamberlayne on Evidence, §§ 849–850; Oklahoma Bar Assn. Report, 1909, p. 161; *Pigeon* v. *Buck,* 38 Oklahoma, 101; *Shulthis* v. *McDougal,* 170 Fed. Rep. 529; *S. C.,* 225 U. S. 561; 2 Minors' Insts., 3d ed., p. 519; Rev. Stat., § 2289; 32 Stat. 500; 34 Stat. 137.

*Mr. George S. Ramsey,* with whom *Mr. Edgar A. de Meules* was on the brief, for defendant in error:

The land in question was allotted to the heirs of Andrew J. Berryhill, and while the heirs take by purchase technically, yet the Arkansas law of descent should be applied just the same as if the heirs of Andrew J. Berryhill had actually inherited the allotment.

There should be no difference in the application of the Arkansas law of descent to a case where the heirs take by purchase technically, instead of by actual descent.

The heirs take *per stirpes* and not as a class *per capita*— discussed with cases and authorities cited.

The allotment of a Creek citizen is not a new acquisition under the Arkansas law, but in the nature of an ancestral estate, his allotment being his birthright, and his right

to the same being acquired by virtue of being a member of the tribe.

Under the Arkansas law of descent it becomes necessary to determine whether or not the estate is ancestral or a new acquisition when there are no descendants—when the allotment passes in the ascending line it is absolutely material to first determine whether the estate is ancestral or new in order to discover the course of descent, that is, whether to the maternal or paternal side, but this is immaterial so long as there are descendants.

To allot the lands of an Indian tribe among the citizens thereof is not the grant or donation of a new title, but is more in the nature of a partition of prior rights.

That an allotment is not a new acquisition and not analogous to the acquisition of title to the public domain of the United States, see opinion of the Eighth Circuit Court of Appeals in *Shulthis* v. *McDougal.*

As said by this court in *Worcester* v. *Georgia*, 6 Pet. 515, "To contend that the word 'allotted' in reference to the land guaranteed to the Indians in certain treaties, indicates a favor conferred rather than a right acknowledged would  .  .  .   do injustice to the understanding of the parties."

Indian allottees are not donees of the Government.

In support of these contentions, see *Brown* v. *Belmarde*, 3 Kansas, 35; *Bassett* v. *Granger*, 100 Massachusetts, 348; *Baskin's Appeal*, 3 Pa. St. 304; *Bailey* v. *Bailey*, 25 Michigan, 185; *Beecher* v. *Wetherby*, 95 U. S. 517; *Beam* v. *United States*, 162 Fed. Rep. 260; *Campbell* v. *Wiggins*, Rice's Eq. 10 (S. Car.); *Cherokee Nation* v. *Hitchcock*, 187 U. S. 294; Const. & Laws of Muskogee Nation by McKellop, 57; *Choate* v. *Trapp*, 224 U. S. 671; *Duffy* v. *Hargan*, 50 Atl. Rep. 678; *Dunlap's Appeal*, 9 Atl. Rep. 936; *Dukes* v. *Faulk*, 37 S. Car. 255; *S. C.*, 34 Am. St. Rep. 745; *Delaware Indians* v. *United States*, 193 U. S. 129; *Davidson* v. *Gibson*, 56 Fed. Rep. 443; *France's Estate*, 75 Pa. St. 220;

*Forrest* v. *Porch*, 45 S. W. Rep. 676 (Tenn.); *Fleming* v. *Mc-Curtain*, 215 U. S. 56; *Fairbanks* v. *United States*, 223 U. S. 215; *Goat* v. *United States*, 224 U. S. 458; *Harvey* v. *Beach*, 38 Pa. St. 500; *Houghton* v. *Kendall*, 7 Allen (Mass.), 72; *Holbrook* v. *Harrington*, 16 Gray (Mass.), 102; *Henry* v. *Thomas*, 20 N. E. Rep. 519; *Hockett* v. *Alston*, 58 S. W. Rep. 675; *S. C.*, 110 Fed. Rep. 910; *Jones* v. *Meehan*, 175 U. S. 1; *Johnson* v. *Bodine*, 79 N. W. Rep. 348; *James* v. *Smith*, 58 S. W. Rep. 715; *Johnson* v. *McIntosh*, 8 Wheat. 543; *Kendall* v. *Gleason*, 152 Massachusetts, 457; *Kelly* v. *McGuire*, 15 Arkansas, 555; *Lipman's Appeal*, 30 Pa. St. 180; *Lott* v. *Thompson*, 15 S. E. Rep. 278 (S. Car.); *Lawton* v. *Corlies*, 27 N. E. Rep. 847; *Ligon* v. *Johnston*, 164 Fed. Rep. 670; *Mullen* v. *Read*, 64 Connecticut, 240; 42 Am. St. Rep. 174; *Minter's Appeal*, 40 Pa. St. 114; *Minnesota* v. *Hitchcock*, 185 U. S. 396; *Martin* v. *United States*, 168 Fed. Rep. 205; *Nivens* v. *Nivens*, 64 S. W. Rep. 604; *Parr* v. *United States*, 153 Fed. Rep. 462; *Russell* v. *Hall*, 101 U. S. 503; *Reynolds* v. *Fewell*, 236 U. S. 58; *Rand* v. *Sanger*, 115 Massachusetts, 124; *Ruggles* v. *Randall*, 38 Atl. Rep. 885; *Richards* v. *Miller*, 62 Illinois, 417; *Rush* v. *Thompson*, 53 S. W. Rep. 333; *Sizemore* v. *Brady*, 235 U. S. 441; *Shulthis* v. *McDougal*, 170 Fed. Rep. 530; *S. C.*, 162 Fed. Rep. 331; *Sweet* v. *Dutton*, 109 Massachusetts, 589; *Sheetz's Appeal*, 82 Pa. St. 213; *Stephens* v. *Cherokee Nation*, 174 U. S. 445; *Spalding* v. *Chandler*, 160 U. S. 394; *Templeton* v. *Walker*, 55 Am. Dec. 646; *Thorn* v. *Cone* (Okla.), not yet reported; *United States* v. *Cook*, 19 Wall. 591; *Washington* v. *Miller*, 235 U. S. 422; *White* v. *Stanfield*, 146 Massachusetts, 424; *Wood* v. *Robertson*, 15 N. E. Rep. 457; *Woodward* v. *James*, 22 N. E. Rep. 150; *Wilson* v. *Owens*, 86 Fed. Rep. 572; *Worcester* v. *Georgia*, 6 Pet. 515.

*Mr. John B. Meserve* filed a brief as *amicus curiæ:*

The lands allotted and with which we are concerned in this case were allotted and conveyed by the United

States and the Creek Nation directly to the "heirs of Andrew J. Berryhill, deceased," and such heirs acquired title to said lands by purchase and not by descent. Supp. Creek Agreement, §§ 6 and 7; *Towner* v. *Rodegeb*, 75 Pac. Rep. 50; *Gould* v. *Tucker*, 100 N. W. Rep. 427; *S. C.*, 105 N. W. Rep. 624; *McCune* v. *Essig*, 122 Fed. Rep. 588; *Warnell* v. *Finch*, 15 Texas, 163; II Blackstone, Com., pp. 209, 240; 3 Washburn on Real Property, p. 4; *Tate* v. *Townsend*, 16 Mississippi, 316, 319; *Johnson* v. *Norton*, 10 Pa. St. 245; *Borgner* v. *Brown*, 33 N. E. Rep. 92; *Starr* v. *Hamilton*, 22 Fed. Cases, 1107; *Sizemore* v. *Brady*, 235 U. S. 441; *Hayes* v. *Barringer*, 168 Fed. Rep. 221; *Cook* v. *Childs*, 145 Pac. Rep. 406; Act of April 26, 1906, § 5; *Malissa Wiley Case*, July 13, 1908, Sec'y Interior Opinion; *Hall* v. *Russell*, 101 U. S. 503; *Hershberger* v. *Blewett*, 55 Fed. Rep. 170; *McKee* v. *Henry*, 201 Fed. Rep. 74; *Franklin* v. *Lynch*, 233 U. S. 505; *Woodbury* v. *United States*, 170 Fed. Rep. 302.

George Franklin Berryhill, as the father of Andrew J. Berryhill and as the heir nearest in the line of succession to Andrew J. Berryhill, acquired, under the laws of descent of the State of Arkansas, an estate in fee simple in the lands in controversy. *Auman* v. *Auman*, 21 Pa. St. 348; Mansfield's Digest § (1) 2522; *Kelly's Heirs* v. *McGuire*, 15 Arkansas, 555; *Brown* v. *Belmarde*, 3 Kansas, 40; *Ward* v. *Stowe*, 27 Am. Dec. 239 (N. Car.); *Cooper* v. *Wilder*, 43 Pac. Rep. 591; *Braun* v. *Mathieson*, 116 N. W. Rep. 789; *Wittenbrook* v. *Wheadon*, 60 Pac. Rep. 664; *Walker* v. *Ehresman*, 113 N. W. Rep. 218 (Neb.); *Aspey* v. *Barry*, 83 N. W. Rep. 91 (S. D.); Mansfield's Digest § (10) 2531.

*Mr. E. G. McAdams* and *Mr. Norman B. Haskell* filed a brief as *amici curiæ*:

No rule of property has been established by the decision of the Circuit Court of Appeals in *Shulthis* v. *McDougal* and the Oklahoma decisions following it.

Had Andrew J. Berryhill lived to receive an allotment he would have taken the same, not technically merely, but substantially, by purchase from the United States and the Creek Nation, and not by descent from his tribal parent.

Under those circumstances, he would have taken the allotment as a new acquisition, by purchase from the United States and from the Creek Nation, even if it be assumed for the purpose of the argument that he took an equitable estate therein by descent from his tribal parent, because the source of the legal title is the controlling factor in determining whether an estate be a new acquisition or an ancestral estate.

Andrew J. Berryhill having died prior to the enactment of the legislation authorizing the making of an allotment to his heirs, and no estate, therefore, having vested in him, said allotment was not an acquisition, new or otherwise, in Andrew J. Berryhill; hence the allotment did not descend to his heirs either as an ancestral estate or as a new acquisition, under § 2531, Mansfield's Digest, but vested in his heirs, under § 2522, Mansfield's Digest, by direct grant from the United States and the Creek Nation, becoming a new acquisition in said heirs.

In support of these contentions, see *Anglo-American Land Co.* v. *Lombard*, 132 Fed. Rep. 721; *Barker* v. *Swenson*, 66 Texas, 408; *Calhoun Mining Co.* v. *Ajax Mining Co.,* 27 Colorado, 1; *S. C.*, 182 U. S. 499; *Collins* v. *Durwood*, 4 Tex. Civ. App. 389; *Goodright* v. *Wells*, 2 Doug. K. B. 771; *Hall* v. *Russell*, 101 U. S. 503; *Hill* v. *Heard*, 104 Arkansas, 23; *Kelly* v. *McGuire*, 15 Arkansas, 555; *Kuhn* v. *Fairmont Coal Co.*, 215 U. S. 349; *Nicholson* v. *Halsey*, 1 Johns. Ch. 417; *Robinson* v. *Belt*, 107 U. S. 41; *Selby* v. *Alston*, 3 Ves. Jun. 339; *Shulthis* v. *McDougal*, 170 Fed. Rep. 529; *S. C.*, 225 U. S. 561; *Sizemore* v. *Brady*, 235 U. S. 441; *Wilson* v. *Beckwith*, 140 Missouri, 359; *Woodbury* v. *United States*, 170 Fed. Rep. 302; Devlin on Deeds, §§ 9, 15.

Mr. Justice McReynolds delivered the opinion of the court.

The solution of this controversy requires ascertainment of the *heirs* of an infant who was enrolled after death, within the intendment of the Supplemental Creek Agreement—Act of June 30, 1902 (c. 1323, 32 Stat. 500).

Andrew J. Berryhill, born in May, 1901, died during the following November leaving his father—George Franklin Berryhill—an enrolled Creek Indian, his mother, a noncitizen of that Nation, and seven paternal uncles and aunts. His name was duly placed on the tribal rolls in October, 1902, and during the years 1904 and 1905 the land presently in controversy (with others) was allotted and patented to his heirs. The father claiming to be Andrew's sole heir—the mother joining—conveyed it June 5, 1906, to defendants in error, Edmond and Perry McKay. Afterwards the paternal uncles and aunts undertook to convey the fee subject to a life estate in the father to McDougal, plaintiff in error. The McKays and parties claiming under them being in possession of the property and extracting oil and gas therefrom, McDougal instituted this proceeding to restrain them and to have his remainder interest declared and confirmed.

The Supreme Court of Oklahoma (43 Oklahoma, 261) held the land must be treated as an ancestral estate in Andrew J. Berryhill and declared the father sole heir. Plaintiff in error maintains that it passed as a new acquisition and the father took a life estate with remainder over to the uncles and aunts. Counsel appearing as *amici curiæ* insist Andrew J. Berryhill had no estate therein, and that the word *heirs* designates persons who themselves took as purchasers.

Under treaty stipulations with the United States the Creek Tribe of Indians as a community for a long time owned and occupied large areas now within the borders of

Oklahoma and maintained there an organized government. Congress finally assumed complete control over them and undertook to terminate their government and distribute the tribal lands among the individuals. *Washington* v. *Miller,* 235 U. S. 422.

The act of March 1, 1901,—Original Creek Agreement (c. 676, 31 Stat. 861, 870)—effective May 25, 1901 (32 Stat. 1971), provided for the enrollment of members living on April 1, 1899, and their children born up to July 1, 1900, and also for allotment of tribal lands. It prescribed further (§ 28) that "if any such child die after said date, the lands and moneys to which it would be entitled, if living, shall descend to its heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly."

The Supplemental Creek Agreement—Act of June 30, 1902, c. 323, 32 Stat. 500, 501, effective August 8, 1902 (32 Stat. 2021), repealed that portion of the Original one establishing descent and distribution under the Creek Law and directed that thereafter these "shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas now in force in Indian Territory: *Provided,* That only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation: *And provided further,* That if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance shall go to noncitizen heirs in the order named in said chapter 49." It also extended the right of enrollment to children born after July 1, 1900, and up to May 25, 1901, and declared "if any such child has died since May 25, 1901, or may hereafter die before receiving his allotment of lands and distributive share of the funds of the tribe, the lands and moneys to which he would be entitled if living shall descend to his heirs as herein provided and be allotted and distributed to them accordingly."

The pertinent sections of Mansfield's Digest are copied in the margin.[1] They sharply distinguish between an es-

---

[1] *Section 2522.* When any person shall die, having title to any real estate of inheritance, or personal estate, not disposed of, nor otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend and be distributed, in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower, in the following manner:

*First.* To children, or their descendants, in equal parts.

*Second.* If there be no children, then to the father, then to the mother; if no mother, then to the brothers and sisters, or their descendants, in equal parts.

*Third.* If there be no children, nor their descendants, father, mother, brothers or sisters, nor their descendants, then to the grandfather, grandmother, uncles and aunts and their descendants, in equal parts, and so on in other cases, without end, passing to the nearest lineal ancestor, and their children and their descendants, in equal parts.

*Section 2531.* In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs; but if the estate be a new acquisition it shall ascend to the father for his lifetime, and then descend, in remainder, to the collateral kindred of the intestate in the manner provided in this act; and, in default of a father, then to the mother, for her life-time; then to descend to the collateral heirs as before provided.

*Section 2532.* The estate of an intestate, in default of a father and mother, shall go, first, to the brothers and sisters, and their descendants, of the father; next, to the brothers and sisters, and their descendants, of the mother. This provision applies only where there are no kindred, either lineal or collateral, who stand in a nearer relation.

*Section 2533.* Relations of the half-blood shall inherit equally with those of the whole blood in the same degree; and the descendants of such relatives shall inherit in the same manner as the descendants of the whole blood, unless the inheritance come to the intestate by descent, devise, or gift, of some one of his ancestors, in which case all those who are not of the blood of such ancestor shall be excluded from such inheritance.

*Section 2534.* In all cases not provided for by this act, the inheritance shall descend according to the course of the common law.

*Section 2543.* The expression used in this act, "where the estate

tate which came to a decedent by a parent and a new acquisition and prescribe different rules of inheritance.

In *Shulthis* v. *McDougal* (170 Fed. Rep. 529), decided June 3, 1909, by the Circuit Court of Appeals for the Eighth Circuit, title to another portion of the Andrew J. Berryhill allotment was involved and it became necessary to ascertain his heirs. Having carefully considered the whole subject that court summed up its conclusions thus (pp. 534–535):

"So long as the tribal relations continued, a member had no right to have a share of the tribal property set off to him as his private, separate estate, for the constitutional policy of the tribe was ownership in common. But when, as here, the time came to disband the tribe, its ownership as a political society could no longer continue, and the division of its property was far more nearly akin to the partition of property among tenants in common than the grant of an estate by a sovereign owner. Under such a scheme it cannot be said that the property which passed to an allottee is a new right or acquisition created by the allotment. The right to the property antedates the allotment, and is simply given effect to by that act. Viewing the tribal property and its division in this light, Andrew J. Berryhill acquired his right to the land in question by his membership in the tribe. It was his birthright. It came to him by the blood of his tribal parent, and not by purchase. In applying the Arkansas statute, we shall accomplish the purpose of Congress and the Creek Nation best by treating the lands not as a new acquisition by him, but as an inheritance from his parents as members of the tribe. His father was the only parent through whom he.

---

shall have come to the intestate on the part of the father," or "mother," as the case may be, shall be construed to include every case where the inheritance shall have come to the intestate by gift, devise or descent from the parent referred to, or from any relative of the blood of such parent.

derived his right, and to the father the land should pass.
If the mother had been a member of the tribe, then the
land should properly pass to the parents equally. From
this premise it necessarily follows that George Franklin
Berryhill succeeded to the entire estate of the property
in question." An appeal to this court was dismissed
June 7, 1912, for lack of jurisdiction (225 U. S. 561).

The Supreme Court of Oklahoma in *Lena Pigeon* v.
*William Buck*, 38 Oklahoma, 101 (April 23, 1913), deter-
mined the heirs of a full-blooded Creek citizen who, hav-
ing been duly enrolled, received a patent to her allotment
and then died intestate, without descendants, leaving
father, mother, brothers, sister and her husband. After
reference to the above-quoted portions of Mansfield's Di-
gest it said (pp. 103–104): "That the land in question was
not a new acquisition, and pursuant to these sections, when
construed together, passed to John Pigeon and Mate
Pigeon, the father and mother of the deceased, is no longer
an open question in this jurisdiction, having in effect been
decided by the Circuit Court of Appeals for the Eighth
Circuit in *Shulthis* v. *McDougal*, 170 Fed. Rep. 529. . . .
Many titles to lands on the eastern side of this State have
been acquired on the strength of this decision, and to
such an extent that the same has become a rule of property
there (*De Walt* v. *Cline*, 35 Oklahoma, 197; *S. C.*, 128 Pac.
Rep. 121; *MaHarry* v. *Eatman*, 29 Oklahoma, 46; *S. C.*, 116
Pac. Rep. 935; *Duff* v. *Keaton*, 33 Oklahoma, 92; *S. C.*, 124
Pac. Rep. 291), we hold that John Pigeon and Mate Pigeon,
his wife, are the persons to whom, on the death of the
allottee, this estate passed in equal moieties, and that
plaintiffs in error, plaintiffs below, have no interest
therein."

We recognize the unusual difficulties surrounding the
problem presented upon the record, and appreciate the
very forceful arguments offered in support of the conflict-
ing theories. The circumstances are novel, and the canons

of descent contained in Mansfield's Digest are not precisely applicable thereto; but these rules must be accommodated to the facts and the great purpose of Congress effectuated as nearly as may be. And not only would it be improper for us to disregard the effect of the decisions already announced by the Circuit Court of Appeals and the Supreme Court of Oklahoma, which are supported by cogent reasoning, but considering the peculiar and rapidly changing conditions within that State especial consideration must be accorded to them. We accordingly accept the doctrine announced therein and hold: (*1*) The property must be treated as an ancestral estate which passed in accordance with the applicable provisions of chapter 49, Mansfield's Digest. (*2*) As the father, George Franklin Berryhill, was of Creek blood, and the mother not, he took a fee simple title to all the land in question. If both parents had been of Creek blood and duly enrolled each would have taken one-half.

*Sizemore* v. *Brady*, 235 U. S. 441, has been referred to as in conflict with the doctrine herein approved. In that case lands were allotted and patented after August 8, 1902, to the heirs of Grayson, an enrolled Creek, who died March 1, 1901, and a contest arose between a paternal cousin and cousins on the maternal side. The former—Brady—claimed descent should be determined according to Mansfield's Digest and that he was sole heir. The latter—Sizemore and Newberry—maintained the Creek Law applied and that they were the only heirs. The Supreme Court of Oklahoma decided in favor of Brady (33 Oklahoma, 169) and in this court the plaintiffs in error expressly admitted that he should prevail "in event the court should hold said lands passed under Chapter 49 of Mansfield's Digest of the Laws of Arkansas, in accordance with the Act of Congress known as the Creek's Supplemental Agreement." We concluded the Arkansas statute controlled and of course did not undertake to decide the

question here presented.   Moreover, it is not possible from the record in the cause accurately to trace the blood of the maternal relatives.

The judgment of the court below must be

*Affirmed.*