**BALDRIDGE et al. v. CAULK et al.**

No. 14951—Opinion Filed Oct. 14, 1924.

Rehearing Denied June 9, 1925.

**1. Indians—Cherokee Allotment—Ancestral Estate—Paternal and Maternal Lines Both Inherit.**

Where an allottee of the Cherokee Nation died leaving surviving him a widow, a father, a maternal grandfather, and other heirs of the maternal line, descent having been cast on January 13, 1905, the date of allotment, such estate is an ancestral estate, and where both father and mother of the decedent are Cherokee citizens by blood, both the paternal and maternal lines inherit. Finley v. Thompson, 68 Okla. 250, 174 Pac. 535; Palmer v. King, 75 Okla. 276, 183 Pac. 411; Glory v. Bagby, 79 Okla. 155, 188 Pac. 881; Roberts v. Underwood, 237 U. S. 386; McDougal v. McKay, 237 U. S. 272, followed.

**2. Same—Dower—Heirs as Reversioners.**

An order of the United States Court for the Indian Territory sitting in probate, setting aside dower, must be construed under section 2593 of Mansfield's Digest, which was in force and effect in the Indian Territory, to have vested in the widow a life estate in the lands described. The reversion thereof is the property of the heirs of the allottee.

**3. Statute of Limitations—Tenancy in Common—Presumption as to Cotenant's Possession.**

The possession by one common tenant, where lands are owned by tenants in common, must be referred to the common title, and in order to set in motion the statute of limitations, sufficient facts must appear to disclose a repudiation of the title of the cotenants. In the absence of such repudiation of the title of the cotenants, possession will not be deemed adverse to the common title.

**4. Same—Absence of Adverse Possession.**

Record examined, and held, that the possession disclosed by the facts in this case

was such possession as must be referred to the common title, and that there is not a sufficient showing of a repudiation of the title of the cotenants to constitute adverse possession.

(Syllabus by Lyons, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Rogers County; C. H. Baskin, Judge.

Action between Coleston Baldridge and others and Fannie M. Caulk and others. From the judgment, the former appeal. Reversed and judgment rendered.

C. E. Castle and E. J. Broaddus, for plaintiffs in error.

W. H. Kornegay and Holbrook & Holbrook, for defendants in error.

Opinion by LYONS, C. Claude C. Clingan, an enrolled Cherokee citizen of five-sixteenths blood, died in the year 1903, entitled to an allotment. Selection was made on his behalf, and allotment was made on January 13, 1905. As the case appears here, he was the son of a father and mother both of whom had Indian blood, and appeared on the approved roll of Cherokee Indian citizens by blood. The allottee left surviving him a father, a maternal grandfather, and other heirs on the maternal side, and a widow. Dower was duly assigned and set aside to the widow by the order of the United States Court for the Indian Territory sitting in probate.

It is the contention of the plaintiff in error that this allotment under the laws of descent and distribution of Arkansas, which were in force and effect in the Indian Territory at that time, was an ancestral estate and (subject to the dower interest) devolved equally upon the heirs of the paternal line and the heirs of the maternal line, for the reason that both the father and mother of the decedent were Indian citizens by blood. The defendant in error contends that the entire allotment is vested in the father, subject to the widow's dower, under the decision in the case of Brady v. Sizemore, 33 Okla. 169, 124 Pac. 615, 59 L. Ed. 308. However, in the case of Palmer v. King, 75 Okla. 276, 183 Pac. 411, the foregoing decision is discussed, as is also the decision of the Supreme Court of the United States in the case of Roberts v. Underwood, 59 L. Ed. 1007, and this court, speaking through Mr. Justice Higgins, states the following:

"This court and the Supreme Court of the United States have passed upon two cases in which the facts are similar to the case at bar. Brady v. Sizemore, 33 Okla.

169, 124 Pac. 615, and 235 U. S. 441, 35 Sup. Ct. 135, 59 L. Ed. 308: Roberts v. Underwood, 38 Okla. 376, 132 Pac. 673, and 237 U. S. 386, 35 Sup. Ct. 608 59 L. Ed. 1007. The opinions of the Supreme Court of the United States are conflicting as to the rights of the paternal and maternal heirs. In the first case it is held that the paternal heirs took all, to the exclusion of the maternal heirs, and in the second case held that the paternal and maternal heirs each took an undivided one-half interest. This conflict has apparently come about for the reason that each case was presented on other issues, and not upon the issue as to the conflicting rights of these two lines of heirs. In both cases the Supreme Court of the United States, in making the findings as to the rights of these lines of heirs, followed the concession of the parties. In the first case the opinion so states, and in the second the pleadings show that the court followed that which was conceded. We are thus required to seek adjudicated cases from other courts.

"In Kelly's Heirs v. McGuire, 15 Ark. 582, Charles Kelly emigrated to Arkansas in 1815, and married a widow, Mrs. Craig, who had two daughters by a former marriage; that Kelly accumulated a fortune, consisting of real and personal property; that he died in 1831, leaving surviving him his wife and a son, Clinton Kelly, that the widow died in 1836, and in 1844 Clinton Kelly died, leaving surviving him his half-sisters, all having the same mother, but different fathers, and a maternal grandfather and other paternal kindred. Clinton Kelly died possessed of lands inherited from his father. The half-sisters and paternal kindred each claimed to be the sole owners of the lands left by the deceased. The court held that section 2531 controlled, and that the paternal heirs took all the real estate to the exclusion of the half-sisters not for the reason as insisted, that section 2532 was made inapplicable, by the existence of kindred in a nearer relation, but for the reason that the estate came by the father; the language of the opinion being as follows: 'The manifest intention of the first part of this section (referring to section 2531 supra) was to preserve ancestral estates in the line of the blood from whence they came. It was a partial adoption or recognition of common law principle, which invariably followed in the line of the blood. * * * In other words, it remains in the paternal or maternal line, from whence it was derived.'

"Again in Beard v. Mosely, 30 Ark. 518, Hugh Beard died, survived by his wife, and a daughter, Eleanor. The widow married Mr. Mosely. The daughter died without issue, having never married, possessed of real estate inherited from her father, and leaving her mother surviving her. The paternal and maternal heirs, the mother in

this instance, claimed the real estate left by the deceased daughter, which she inherited from her father, Hugh Beard. The court held that the paternal kindred took, to the exclusion of the mother and maternal kindred, not for the reason, as insisted, that section 2532 was inapplicable, there being kindred in a nearer relation, but for the reason that the estate came by the father and must ascend to his heirs, the paternal kindred.

"Plaintiffs in error contended that section 2532 is a general statute, and that a literal construction should be given thereto, applying to all estates. In order to determine the legislative intent of section 2532, it is necessary to consider all of chapter 49, supra. Section 2531 refers to a particular estate, one left by an intestate, which came by the father or mother, and fixes the devolution of this estate, which says it must ascend to the line from whence it came. Section 2532 is a general statute. The rule of construction of conflicting statutes as set forth in 36 Cyc. 1130, is as follows: 'Where general terms or expressions in one part of a statute are inconsistent with more specific or particular provisions in another part, the particular provisions will be given effect, as clearer and more definite expressions of the legislative will.'

"The estate involved in the case at bar is ancestral. Shulthis v. McDougal, supra. The father and mother of Charlotte Winlock are both of Indian blood. Applying the reasons given in the above cases cited from the Arkansas courts, and the general rule of construction of conflicting statutes, we find that section 2531 controls in the devolution of the real estate of the case at bar, and that each line of heirs took an undivided one-half interest in the allotment of the deceased."

In the case of Finley v. Thompson, 68 Okla. 250, 174 Pac. 535, Mr. Justice Kane considered a similar question and came to the conclusion that, whilst the allotment was an ancestral estate, as is conceded, the father and mother being both of Indian blood, the allotment came through the blood of the tribal parents—as much through the blood of one as through the other—

"It is agreed between counsel for the respective parties that the devolution of the land in controversy is governed by chapter 49, Mansfield's Digest of the Laws of Arkansas, in force in the Indian Territory prior to statehood, and that the controlling part thereof is section 2531, which provides: 'In cases where the intestate shall die without descendants, if the estate shall come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs, but if the estate be a new acquisition it shall ascend to the father for his

lifetime, and then descend, in remainder to the collateral kindred of the intestate in the manner provided in this act; and in default of a father, then to the mother for her lifetime, then to descend to the collateral heirs as before provided.'

"It is also conceded that the allotment of Nicholas Bean was an ancestral estate, and that its devolution is governed by the principles announced in Shulthis v. McDougal, 170 Fed. 529, 95 C. C. A. 615; Pigeon v. Buck, 38 Okla. 101, 131 Pac. 1083; Id., 237 U. S. 386 35 Sup. Ct. 608, 59 L. Ed. 1007; McDougal v. McKay, 237 U. S. 372, 55 Sup. Ct. 605, 59 L. Ed. 1001; Id., 43 Okla. 251, 143 Pac. 987.

"With these preliminary questions taken as settled and out of the way, we will now proceed to examine the contentions of the respective parties.

"If we understand the defendants' first contention, it amounts to this: Inasmuch as Nicholas Bean was enrolled as a Chickasaw, the tribal blood of his father, it must be held that his allotment came to him by his father, and therefore, upon the death of Nicholas without descendants, the land ascended to his father and his heirs, to the exclusion of his Choctaw mother, and her heirs. We are unable to agree with this proposition. In Kelly v. McGuire, 15 Ark. 555, where section 2531 was fully considered, it was held that: 'The manifest intention of the first part of this section was to preserve ancestral estates in the line of the blood from whence they came.'

"This, no doubt, is a correct statement of the purpose of the section; but, in our opinion, it does not support the contention that the intention of the statute, when applied to Indian allotments, was to preserve the allotment in the line of any particular strain of Indian blood. In Thorn v. Cone, 47 Okla. 781, 150 Pac. 701, where the deceased allottees and their parents were all members of the Seminole Tribe of Indians, it was held that the allottees acquired the right to their allotments by their membership in the Seminole Tribe, and that their father and mother being full-blood Seminoles, their allotments came to them through the blood of their tribal parents, and as much through the blood of the one as the other." Finley v. Thompson, supra.

See, also, Whitener v. Moss, 71 Okla. 57, 175 Pac. 223, and Glory v. Bagby, 79 Okla. 155, 188 Pac. 881; Pigeon v. Buck, supra; Roberts v. Underwood, 237 U. S. 386; McDougal v. McKay, 237 U. S. 272.

It is our duty, therefore, to follow the decisions of this court and of the Supreme Court of the United States to the effect that this allotment was an ancestral estate; that since the allotment came to the allottee through the blood of both sides, both parents being enrolled citizens of the Cherokee

Nation by blood, the paternal line and the maternal line both inherit.

We shall next discuss the question of the dower estate of the widow of the deceased, which has been conveyed to the father of the deceased.

Defendants in error contend that in this case such estate was the fee interest in the 50 acre tract described.

In this connection it is proper to consider the proceedings of the United States Court for the Indian Territory sitting in probate, said proceedings being as follows:

"Saturday, October 28th, 1905. Court met pursuant to adjournment, present and presiding, the William R. Lawrence, Judge. Court having been opened in due form of law, the following proceedings amongst others were had.

"In the matter of the administration of the estate of Claude C. Clingan, deceased, Mattie A. Barr, formerly Mattie A. Clingan, administratrix.

"Now on this the 28th day of October, 1905, the same being one of the days of the regular A. D. October, 1905, term of this court came on to be heard the application of Mattie A. Barr asking that commissioners be appointed to lay off and set aside, the dower interests of the widow, Mattie A. Barr, formerly Mattie A. Clingan, in and to the estate of the said Claude C. Clingan; and it appearing to the court that Mattie A. Barr, formerly Mattie A. Clingan, was the lawful wife of the said Claude C. Clingan, at the time of his death, and that it is right and proper to appoint commissioners to lay off and set aside the widow's dower; and the court being fully advised in the premises: It is by the court considered ordered adjudged and decreed that commissioners be appointed to lay off and set aside the dower interests of the widow, Mattie A. Barr, formerly Mattie A. Clingan, in and to the said estate, and the court being fully advised that James Legate of Chelsea, I. T., and William N. Riley of Nowata, I. T., and William Gillespey, Nowata, are competent and worthy men and duly qualified to act as commissioners to lay off and set aside the dower interests of the said widow in and to the said estate, and not of kin to any of the parties interested in the said estate: It is by the court ordered that said James Legate, William N. Riley and William Gillespey be appointed commissioners to lay off and set aside the said widow's dower and to report their actions and doings as such commissioners to this court.

"William R. Lawrence,

"Judge of the United States Court for the Northern District of the Indian Territory.

"Court met pursuant to adjournment, present and presiding the Honorable William R. Lawrence, Judge. Court having been opened in due form of law the following proceedings, amongst others, were had:

"In the Matter of the Estate of Claude C. Clingan, deceased. Mattie A. Clingan, Administratrix. Probate No._____.

"Now on this 19th day of December, 1905, the same being a day of the regular October, 1905, term of this court, this cause comes on for hearing upon the report of the commissioners heretofore appointed to lay off widow's dower in the real property of the above named estate, and it appearing to the court from said report duly verified and from other evidence that the said estate can be divided without injury to the same and that said commissioners have equitably divided the same and have laid off and set apart to said widow as her dower and entire interest in and to said lands described in said report, and the court being fully advised, it is therefore by the court ordered, adjudged and decreed, that the following described lands in the Cherokee Nation, Indian Territory, to wit: The W.2 of S.E.-4 of S.E.4 and the E.2 of S.W.4 of S.E.4 and the S.W.4 of S.W.4 of S.E.4 all of section 32, township 23 N., range 18E.: also the N.2 of S.W.4 of S.E.4 of S.E.4 of section 1. township 26E. be and the same are hereby set apart as the dower and entire interest in and to the lands of said decedent to the said widow of said Claude C. Clingan, deceased. the said lands being a part of the lands belonging to said Claude C. Clingan at the time of his death, and the said report of the said commissioners herein is ratified and confirmed in all things and said commissioners are hereby allowed the sum of $6 each for their services in and about the performances of their said duties as said commissioners.

"William R. Lawrence,

"Judge of the United States Court for the Northern District of the Indian Territory."

It is proper to consider in connection with the foregoing section 2593 of Mansfield's Digest, which is as follows:

"Where a husband dies, leaving a widow and no children, the widow is entitled to be endowed of one-half of the real estate during her natural life only."

In the case of Brown v. Collins, 14 Ark. 421. the Supreme Court of Arkansas gave the foregoing statute the following definition:

"Upon the construction of the statute concerning dower, where a husband dies, leaving a widow and no children, the widow is entitled to be endowed of one-half of the real estate, and also one-half of the slaves of which the husband died seized, during her natural life only, and not in fee or absolutely in her own right.

"The term dower has a common law meaning, importing an estate for life, not to be controlled without a contrary intention clearly manifested by the statute."

We think it is clear, therefore, that the order of the United States court sitting in probate, in the light of the Arkansas statute which was in force and effect in the Indian Territory, vested in the widow a life estate in the lands described, and that the reversion thereof is the property of the heirs of the allottee.

There remains for discussion the question as to the statute of limitations, the bar of which is claimed by defendants in error.

The plaintiffs in error contend that all of the heirs were tenants in common, and that the possession by one tenant must be referred to the common title. The following authorities support this contention: 2 Corpus Juris, sec. 591, p. 267; Brewer & Keeler, 42 Ark. 289; Layton v. Campbell, 155 Ala. 220, 48 South. 775, 130 Am. St. Rep. 17; Warfield v. Lindell. 30 Mo. 272.

The showing in this cause in our opinion fails to disclose a repudiation of the title of the cotenants (the heirs through the maternal line) sufficient to constitute the adverse possession required in a case of this kind. There are additional circumstances in the cause which militate against the operation of the statutes of limitations.

Columbus Baldridge, the maternal ancestor, was a full-blood Cherokee citizen, and restrictions against the lands in controversy by full-blood Indian heirs were imposed by the Act of April 26, 1906. Columbus Baldridge left certain grandchildren who are full-blood Indian citizens, and under the decision of this court in the case of Smith v. Blunt. 84 Okla. 225, 202 Pac. 1027, the lands were restricted lands in the hands of these full-blood grandchildren.

In the case of Sandlin v. Barker, 95 Okla. 113, 218 Pac. 519, it was held by this court, in effect, that statutes of limitation of the state do not begin to operate until restrictions are removed, and under a long line of decisions of the Supreme Court of the United States, including such cases as Blanset v. Cardin, 65 L. Ed. 950, Sperry Oil & Gas Co. v. Chisholm, 68 L. Ed. 803, and Bunch v. Cole, 68 L. Ed. 1199, it is clear that state statutes are not applicable to restricted lands, which are under the exclusive guardianship and jurisdiction of Congress, unless it is clearly indicated that it is the intent of Congress to make such state statute applicable.

The statutes of limitation, therefore, could not apply to the interests of the full-blood Indian heirs who are under the restrictions of the laws of the United States.

We are convinved further, from an examination of the record, that the possession taken under the order of the United States court of the 50 acres therein described was only such possession as the owner of the dower interest (the life estate) was entitled to hold, and that the same was in no sense adverse to the owners of the reversion.

We are further of the opinion that there is no such showing that any possession adverse to the claims of the cotenants and coheirs was had which is sufficient to raise the bar of a statute of limitations.

We are further of the opinion that the interests of the heirs who are restricted from alienating their interest by the laws of the United States could be conveyed only in the manner provided by the laws of the United States, and that such heirs could not be divested of their title by a state statute of limitations.

It is our view, therefore, that subject to the dower interest (a life estate in the lands set aside as dower by order of the United States Court sitting in probate), the allotment was devolved upon the heirs of the paternal and the maternal side in equal portions.

The judgment of the court below is reversed with directions to render a judgment in conformity with the views herein expressed.

By the Court: It is so ordered.