## KING v. BEALL et al.

No. 21918.     Feb. 13, 1934.

Withdrawn, Corrected, and Refiled Feb. 28, 1934.

Brunson, Kemp & Kemp, for plaintiff in error.

J. C. Denton, R. H. Wills, J. H Crocker, I. L. Lockewitz, J. P. Greve, R. J. Roberts, John Rogers, H. O. Bland, H. C. Carver, Pryor & Stokes, Stephenson, Proffitt & Shackleford, Ray S. Fellows, Joseph A. Gill, Jr., P. J. Carey, and R. J. Roberts, for defendants in error.

BAYLESS, J.     This action was commenced in the district court of Seminole county, Okla., by Annie King, hereinafter called plaintiff, against M. A. Beall et al., hereinafter referred to as defendants, to quiet title, to recover possession and recover judgment for oil and gas alleged to have been produced from the south half (S. ½) of the northwest quarter (N. W. ¼) of section 22, township 10 north, range 8 east, in Seminole county, Okla.

Plaintiff states in her brief that the trial court sustained a general demurrer which went to the very merits of this cause, but defendants contend that the cause was tried on an agreed statement of facts and certain documentary evidence introduced pursuant thereto, and the trial court rendered judgment in favor of the defendants, and that this appeal arose out of the alleged error of the trial court in rendering judgment for said defendants.

Upon page 471 of the record appears a stipulation entered into between the parties, and following said stipulation appears certain documentary evidence. The journal entry of judgment discloses as follows:

"And thereupon said cause came on for hearing before the Hon. Geo. C. Crump, district judge, within and for said district, on a written stipulation regularly signed and filed in said cause together with additional evidence, both oral and documentary, and the court having read and considered said stipulation, together with the other evidence offered, both oral and documentary, and having heard and considered argument of counsel thereon and in connection therewith, and being fully advised in the premises, finds the issues in favor of the defendants and against the plaintiff."

Therefore, we must consider the cause as having been tried upon an agreed statement of facts.

Numerous contentions are made by the

parties to this appeal, but in our opinion one question is decisive of the case.

The plaintiff in her brief in substance states:

"That Wilson King, a full-blood Creek Indian, died in Okfuskee county, seized with an allotment of land, part of which allotment is in question here. He died intestate and left as his sole and only heirs certain persons, among whom is this plaintiff in error, a full-blood Creek Indian. That a guardian was appointed for Annie King, the plaintiff herein, and that the guardian attempted to sell the undivided interest in this allotment, which said plaintiff insists is void.

"It was a private sale. It had to be appraised under the law relating to private sales in probate matters. In considering the value of the land, the appraisers took into consideration the alleged interest of the widow of the deceased allottee Jack King, one Ollie Bruner. The said Ollie Bruner, it is contended by plaintiff in error, had no interest in the allotment by descent or otherwise. That in considering her as an heir, when she was not, it is the contention of plaintiff in error that it operated to detract that much from her interest in the estate, and necessarily resulted in alleged fraud being perpetrated upon her estate."

The defendants, answering said contention, under their first proposition, state:

"Ollie Bruner inherited a dower estate in and to the lands involved herein, and therefore the probate proceedings and guardianship deed involved herein were regular and in accordance with the facts and consequently said proceedings and said deed were and are good and valid."

The stipulation entered into between the parties hereto shows (C.-M. 471):

"That the land in controversy originally constituted a portion of the allotment of Wilson King, a full-blood Creek citizen. That Wilson King died intestate in the month of March, 1901, and left surviving him, his mother, Chotke King, a full-blood Creek citizen, and his father, Jack King, a full-blood Creek citizen. That the Creek law governed the descent of the allotment of Wilson King, and under said law Chotke King, his mother, was his sole heir.

"That Chotke King died in the year 1901, leaving as her heirs, her husband, Jack King, and her daughter, Annie King. That the Creek laws governed the descent of the aforesaid land of Chotke King; that Jack King and Annie King each inherited an undivided one-half interest in said lands, as her heirs; that subsequent to the death of Chotke King, Jack King married Ollie Bunner, sometimes known as Ollie Bruner; that

Jack King died intestate on the 20th day of April, 1903, leaving surviving him, his widow, the said Ollie Bunner, and his daughter, Annie King, and that the Arkansas law governed the descent of the aforesaid lands of the said Jack King."

The record discloses that in the guardianship sale proceedings, the appraisers, guardian, and county court proceeded upon the theory that Ollie Bruner was entitled to a dower estate in said property.

If Ollie Bruner, under the then existing law, inherited a dower interest in the estate of Jack King, the other question raised in said briefs thereby become immaterial, for plaintiff is seeking to recover upon the sole ground that there was a legal fraud committed upon the estate of said ward when her interest in said lands was sold subject to the dower interest of Ollie Bruner, the widow of Jack King.

The only cases cited by plaintiff in support of her contention are: Marlin v. Lewallen (U. S.) 72 L. Ed. 308, and Longest v. Langford (U. S.) 72 L. Ed. 471. In Marlin v. Lewallen, the court held that:

Neither the Original Creek Agreement nor the Supplemental Creek Agreement provided estates by curtesy, and the curtesy rights mentioned in that section of Mansfield's Digest of the Laws of Arkansas, 556, is not applicable to Creek Indians under either the Creek Agreement or the Supplemental Creek Agreement.

Plaintiff states in her brief:

"The same statute in Mansfield's Digest that relates to curtesy rights relates to dower rights."

The defendants refute this statement and quote from section 252, chap. 49, Mansfield's Digest of the Statutes of Arkansas, as follows:

"When any person shall die, having title to any real estate of inheritance, or personal estate not disposed of, nor otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend and be distributed, in parcenary, to his kindred, male and female, subject to the payment of his debts **and the widow's dower in the following manner. * * *"**

Section 6 of the Creek Supplemental Agreement (32 Stat. 501) provides:

"The provisions of Act of Congress approved March 1, 1901 (31 Stat. at L. 861, chap. 676), in so far as they provide for descent and distribution according to the laws of the Creek Nation, are hereby repealed and the descent and distribution of land and money provided for by said act

shall be **in accordance with chapter 49 of Mansfield's Digest** of the Statutes of Arkansas now in force in Indian Territory; Provided, that only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation; and provided, further, that if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance shall go to noncitizen heirs in the order named in said chapter 49."

However, it is to be observed that while dower is not defined in chapter 49 of Mansfield's Digest, it is specifically mentioned.

Defendants in their brief make the following statement:

"This court in the cases of Hawkins v. Stevens, 21 Okla. 849, 97 P.. 567; Byrne v. Kernals, 55 Okla. 573, 155 P. 587; Eysenbach v. Naharkey, 114 Okla. 217, 246 P. 603; Cook v. Childs, 49 Okla. 321, 152 P. 88; In re Lewis' Estate, 100 Okla. 283, 229 P. 483; Wadsworth v. Crump, 53 Okla. 728, 157 P. 713; Dailey v. Benn, 81 Okla. 285, 198 P. 323; Hawkins v. Ferguson, 131 Okla. 277, 268 P. 727; Bruner v. Chisholm, 132 Okla. 10, 268 P. 1113; Powell v. Crittenden, 57 Okla. 1, 156 P. 661; and Baldridge v. Caulk, 110 Okla. 185, 237 P. 453, has held that where the descent of the allotment of a deceased Indian is determinable by the laws of Arkansas, the surviving wife of such Indian is entitled to a dower estate in and to such allotment, and we know of no case or cases to the contrary, either state or federal."

From an examination of the above cases, we find that this court has consistently recognized the surviving wife of a deceased Indian is entitled to dower estate when governed by the laws of Arkansas. Plaintiff has cited no case holding to the contrary under circumstances similar to the instant case.

In the case of Hawkins v. Stevens, supra, decided in 1908, we held:

"The noncitizen widow of an allottee of a quarter section of land of the Creek Nation, whose husband died in June, 1906, is entitled to dower in his estate, and until it is assigned to her is entitled to remain and possess the home or house of her late husband, together with the farm thereto attached, free from all rent."

In Bruner v. Chisholm, supra, which case was decided in 1928, we said:

"Under the laws of descent and distribution of Arkansas, which were in force in this jurisdiction at the time her husband died, she inherited and had a vested right in a dower estate in and to the lands in controversy. This right was cast upon her by the statute."

In analyzing the contentions of plaintiff, it will be observed that no cases are cited involving the rights of a widow to a dower estate.

The reason for not recognizing curtesy estates is stated by the Supreme Court of the United States in Marlin v. Lewallen, supra, when it said:

"Chapter 20 of Mansfield's Digest, on which the adopted Arkansas law of curtesy was based, was not mentioned. Chapter 49, which was particularly called into play, was the adopted Arkansas law of descent and distribution. **It said nothing about curtesy.**

"Plainly there was nothing in the agreements which could have been understood by the Indians—or even by others—as providing for curtesy, and this is true of the tribal laws temporarily recognized by the Original Agreement and of chapter 49 of Mansfield's Digest, which was substituted for them by the Supplemental Agreement."

Defendants therefore contend that if chapter 49 of Mansfield's Digest of the Statutes of Arkansas had provided for and referred to estates by curtesy as it did refer to estates by dower, the decision of the United States Supreme Court in the two above cases would undoubtedly have been different.

Since chapter 49 of Mansfield's Digest, supra, specifically refers to dower estates, and curtesy estates are not mentioned therein, we hold that the rule in Marlin v. Lewallen and Longest v. Langford is not applicable in the instant case.

We are of the opinion that when the Mansfield's Digest in section 2522, recited:

"* * * subject to the payment of his debts and the widow's dower"

—this case is distinguishable from the decisions of the Supreme Court of the United States, supra.

For the reasons above stated, we hold that the said Ollie Bruner inherited a dower estate in and to the lands involved herein, and therefore the probate proceedings and guardianship deed herein were regular and in accordance with the facts, and consequently said proceedings and said deeds were and are good and valid. In adopting the above views, we find it unnecessary to discuss the other propositions raised in the respective briefs, which are dependent upon this issue.

The judgment of the trial court is affirmed.

RILEY, C. J., and SWINDALL, ANDREWS, McNEILL, and OSBORN, JJ., concur.