William B. GEB, Mae I. Geb and Leonard G. Geb, Plaintiffs in Error,

v.

Wendell WILKINS, Guy S. Shultz and George Walter Shultz, Defendants in Error.

No. 40251.

Supreme Court of Oklahoma.

Feb. 16, 1965.

Raymond A. Trapp, Ponca City, for plaintiffs in error.

Singletary & Duncan, Perry, Armstrong, Burns & Baumert, Ponca City, for defendants in error.

DAVISON, Justice.

This is an appeal in a quiet title action by William B. Geb, et al. (plaintiffs below) from an order sustaining a demurrer to their evidence and a judgment in favor of Wendell Wilkins, et al. (defendants below) on their cross-petition. The parties will be referred to by their trial court designations.

The controversy is whether the plaintiffs or the defendants own a strip of land about, but probably not exceeding 37 feet in width, lying along the north and south common boundary line between their respective properties in Lot 2, Sec. 3, Township 25 North, Range 2 East, in Kay County, Oklahoma. Lot 2 is an irregular fractional quarter of a quarter of a section of land consisting of 39.4 acres, and is bounded on the north by the section line and road and on the west by the half section line. Along this half section line is a road or highway of undetermined origin, but existing for many years, and long prior to 1925. The plaintiffs' land is located in the northwest corner of Lot 2, adjoining said section line and half section line. Defendants own the balance of Lot 2.

The title to all of Lot 2 was originally allotted to Julia Fireshaker, a full-blood non-competent Ponca Indian. Prior to November, 1925, said allottee, by proper and duly approved conveyance, deeded Lot 2 to Nellie F. Kent, which deed contained a restriction against alienation without the consent of the Secretary of Interior. On November 17, 1925, Nellie F. Kent, by proper and duly approved conveyance, deeded "The W/2 of the NW/4 of the NW/4 of Lot #2, of Sec. 3–25 N–2 E, containing 1.23125 acres, more or less, according to Government survey." to H. B. Anderson. In 1933 Anderson conveyed the property to Arthur Geb and Alice Geb and plaintiffs later acquired the property.

By deeds, duly approved, dated June 9, 1961, the defendants acquired their title to the balance of Lot 2.

The validity of the deeds by which the parties acquired their respective titles is not questioned.

Defendants contend that, in calculating the area belonging to plaintiffs, the portion of the half section line right of way lying within plaintiffs' described property should be considered as a part of such area. Plaintiffs contend said right of way should not be considered in determining the area owned by them. The trial court approved defendants' contention when it sustained the demurrer to plaintiffs' evidence and rendered

judgment for defendants on their cross-petition. The interpretation of plaintiffs' conveyance description and the determination of the location of the common boundary line is the question involved.

The parties admit that adverse possession does not enter into this controversy because there can be no adverse holding if the title to said strip of land was in a restricted Indian. Baldridge v. Caulk, 110 Okl. 185, 237 P. 453, and Anthis v. Drew, 123 Okl. 18, 252 P. 11.

The trial judge refused to admit certain evidence of the plaintiffs because it appears he believed it pertinent only to showing of adverse possession. As hereinafter shown this evidence was competent to ascertain the intention of the parties to the deeds in plaintiffs' chain of title. Plaintiffs' proof and offers of proof reflected or tended to show that: Lot 2 was an irregular quarter of a quarter section and the description, W½ NW¼ NW¼, was not in itself a definite description; a fence or wall marked the east line of plaintiffs' property and they and their predecessors in title had been in possession of the tract to this fence and of improvements since the Interior Department approved deed from Kent to Anderson; the area occupied by plaintiffs, exclusive of the right of way at the half section line, corresponds within a very small fraction to the area expressed in acres in the deed; deduction of the area in the half section right of way will reduce the usable area remaining to plaintiffs by about ¼ acre; inclusion of such right of way, in computing the area conveyed, will cause the east boundary of plaintiffs' land to divide a house on the premises; no objection has been made to the location of the fence since the division of Lot 2; and that in 1950, in a conveyance to the State for highway purposes of a strip off the north side of the property later acquired by defendants, the grantors conveyed by a description beginning 202 feet east of the northwest corner of Lot 2, being at or about the location of said fence.

We now turn to a consideration of the law applicable to the situation. This seems to be a case of first impression in this jurisdiction.

The first element in the construction of any deed, whether it be in connection with the description or some other phase of the conveyance, is to ascertain the intention of the parties, if possible. In 12 Am.Jur.2d, Boundaries, Sec. 3, the last sentence reads:

"* * * And generally, in any event, that rule should be adopted which is most consistent with the intention of the grant."

Again, in Section 2, the text reads:

"The primary rule which the courts apply in construing and interpreting a conveyance where the location of the boundary lines of the land is uncertain by reason of inconsistent or conflicting descriptive calls in the conveyance which cannot be explained by any competent evidence, is that the intention of the parties controls and is to be followed. * * * *"

In the first place, we believe that it cannot be presumed that when the conveyance of Kent, made in 1925, was executed, it was the intention of the grantor to have the east boundary line pass through the house on the premises, as it would if the contention of defendants was correct. Further, while it may be true that the doctrine of estoppel, and possibly that of acquiescence, as well as adverse possession, cannot be invoked against a restricted Indian, certainly the existence and maintenance of the fence as an eastern boundary from 1925 to 1961 without objection by any owner or the government tends to show boundary by consent.

Again the fraction so carefully worked out, namely: 1.23125 acres, carrying out the fractional interest to thousandths place, is evidence of the care of the scrivener. This corresponds approximately with the area enclosed by the fence, exclusive of the

half section line right of way. This could be an indication of the intention of the grantor.

▇ This land was located in Lot 2, an irregular quarter of a quarter section. For this reason, the first part of the description "W–½ NW–¼ NW–¼" was indefinite. Therefore, the rule expressed in 12 Am. Jur.2d, Boundaries, Sec. 11, comes into play:

> "Generally speaking, the boundaries of a tract or parcel of land are seldom delineated by the quantity or acreage but where the boundaries are in doubt, the quantity may become an important factor."

The acreage therefore becomes important. If the contentions of defendants were sustained, about one-fifth in area of the land involved would be unusable because located in the half section right of way.

▇ Plaintiffs' evidence, introduced and offered, tended to show that their *claimed* boundaries were marked by a fence, and that they and their predecessors in title were in open, exclusive, and peaceable possession of approximately 1.23125 acres within their claimed boundaries, prior to defendants acquiring their title to the balance of Lot 2. Under such circumstances, the applicable rule is stated in Tittle v. Robberson, 143 Okl. 97, 287 P. 1011, as follows:

> "The possession of real property carries with it the presumption of ownership, and it is the duty of those purchasing such property from others than those in possession to ascertain the extent of their claims; and the open actual possession of such property gives notice to the world of just such interest as the possessor actually has therein."

▇ It is our conclusion in this situation and under these authorities that plaintiffs made a sufficient showing that the parties to the deed in question intended to convey 1.23125 acres exclusive of the half section right of way. The trial court erred in sustaining a demurrer to plaintiffs' evidence.

After the demurrer was sustained the defendants only introduced evidence fixing the location of the boundary line in accordance with their contention. Defendants introduced no evidence to refute that introduced and offered by plaintiffs for the obvious reason that they were not required to do so after their demurrer to plaintiffs' evidence had been sustained.

▇ In Modern Woodmen, etc. v. Tulsa Modern Woodmen B.A., Okl., 264 P.2d 993, 994, this court stated:

> "Generally, the rule that where the judgment of the trial court in an equity case is against the clear weight of the evidence, the judgment will be reversed and this court will render, or cause to be rendered, such judgment as the trial court should have rendered, is not applicable to cases which reach this court on appeal from a judgment rendered pursuant to an order sustaining defendant's demurrer to plaintiff's evidence, or under any other circumstances where defendant has had no opportunity to present his case-in-chief."

See also Townsend v. Creekmore-Rooney Company, Okl., 332 P.2d 35, and Sterling Milk Products Co. v. Brown, 146 Okl. 302, 294 P. 117.

Reversed and remanded with instructions to grant a new trial and proceed in accordance with the views herein expressed.

HALLEY, C. J., JACKSON, V. C. J., and WILLIAMS, BLACKBIRD, IRWIN and BERRY, JJ., concur.